# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| SCOTT CLEVENGER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No.: 1:13-CV-279-HSM-SKL |
| | ) |
| ERIC QUALLS, Warden, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Petitioner Scott Clevenger, a Tennessee inmate proceeding *pro se*, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging his Tennessee convictions and sentences for rape of a child, aggravated sexual battery, and incest. Having considered the submissions of the parties, the State-court record, and the law applicable to Clevenger's claims, the Court finds that the petition should be denied.

### I. SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

The Tennessee Court of Criminal Appeals ("TCCA") summarized the facts of this case as follows:

> The victim, K.G., is the stepdaughter of the Appellant [Clevenger], and the victim, S.C., is the Appellant's daughter. On February 25, 2006, seventeen-year-old K.G. confided in her sister S.C., who was fifteen, that the Appellant had reinitiated sexual contact with her after believing that the ongoing molestation had ended. The following day, the victims reported the incident to the Grainger County Sheriff's Department and informed officers that the Appellant had been sexually abusing both of them over a period of years. After the two victims were interviewed by Department of Children's Services ("DCS") investigators, the Appellant was interviewed by Officer Maness of the sheriff's department. Maness orally advised the Appellant of his rights, including the right to remain silent and the right to an attorney, before questioning the Appellant. Although the Appellant initially denied any wrongdoing, he eventually gave four written statements during the course of the interview, admitting sexual penetration and contact with both victims. According to Maness, the Appellant was, prior to the giving of each of the four statements, read his rights. Each statement was signed by the Appellant and

included a separate signed acknowledgment, also signed by the Appellant, waiving his Fifth Amendment rights. The four signed statements by the Appellant, with accompanying signed waiver of rights forms, were introduced as exhibits at the hearing.

Following his indictment on August 15, 2006, by a Grainger County grand jury for one count of aggravated sexual battery involving the victim K.G., one count of rape of a child involving the victim S.C., and two counts of incest, one of K.G. and one of S.C., the Appellant filed a motion to suppress his statements to Officer Maness. A hearing on the motion was held on December 6, 2006, immediately prior to commencement of the trial. At the hearing, the Appellant testified that he did not recall being informed of his *Miranda* rights. He acknowledged that he "signed some papers after the questioning," but he claimed that he did not recall what the papers were. Moreover, he insisted that he signed the papers after he had given his statements to police. However, Officer Maness testified that he informed the Appellant of his rights "each time before he gave [the four] statements." Additionally, he stated that he had specifically asked the Appellant each time if he understood his rights and, further, reminded the Appellant of his rights following each break that was taken during the questioning.

Tape recordings of the interview with the Appellant were admitted into evidence at the hearing as well. No indication of *Miranda* warnings was audible on the tape, with the only mention of the rights being "at the beginning of one ... tape, [the Appellant] was advised that he had been read his rights." When asked why the warning as given did not appear on the tapes, Maness stated that he did not know "whether [the rights portion of the interview] were taped or not." The trial court, after hearing the testimony presented, accredited the testimony of Officer Maness and denied the Appellant's motion to suppress, finding that the Appellant had knowingly and voluntarily waived his constitutional rights as provided by *Miranda.*

At trial, S.C. testified that she had been sexually molested and raped by the Appellant and that the incidents had beg[u]n when she was six years old. The first incident involved her father forcing her and her stepsister, K.G., to "perform oral sex on him, and he was touching us in places like down below...[.]" She also testified regarding a 2002 incident, when she was twelve years old, during which the Appellant took her into his bedroom, "and he penetrated me that night ... and he performed oral sex [on her] ... [and] made her" perform oral sex on him. S.C. also testified to a specific incident occurring in 2004, during which the Appellant had her "on the couch and he was trying to do things with [her]. Once again it was oral, and then he tried to stick his penis in [her] vagina and it hurt ... and he quit."

K.G. also testified at trial that she had been sexually molested and raped by the Appellant, stating the abuse began when she was nine years old with an incident involving both her and S.C. during which the Appellant fondled her, touched her, and made her perform oral sex on the Appellant. She stated that the abuse continued until 2006, with the final incident occurring on February 25. According to K.G.,

2

she was lying on a futon with her eyes closed. She assumed the Appellant thought her to be asleep. According to K.G., the Appellant was "sticking his fingers in me and everything, and then oral sex again."

At trial, Officer Maness read the Appellant's four statements into the record. The Appellant testified and denied that any of the incidents had occurred. He testified that he only gave the statements to police after he was questioned for four and a half hours and that he signed the statements because he "was scared mostly ... and didn't want to see my girls hurt or go through any pain or suffering." According to the Appellant, he informed the officers that he had problems with his memory due to heavy drug usage, and they gave him "hints" and convinced him that the incidents had occurred.

*State v. Clevenger*, No. E2007-00298-CCA-R3-CD, 2008 WL 588862, at *1–2 (Tenn. Crim. App. Mar. 5, 2008) ("*Clevenger I*") (footnotes omitted).

Clevenger was ultimately convicted by a Grainger County jury of one count of aggravated sexual battery, one count of rape of a child, and two counts of incest. *Id*. at *1. He was sentenced to consecutive sentences of 9 years for aggravated sexual battery, 25 years for rape of a child, and 6 years for one count of incest and 10 years for the second count, resulting in a total sentence of 50 years. *Id*.

On direct appeal, Clevenger argued only that his statements should have been suppressed due to an alleged *Miranda*[1] violation. *Id*. at *1. The TCCA deemed the issue waived because Clevenger failed to present the issue in a motion for a new trial. *Id.* at *3. In the alternative, the TCCA upheld the trial court's determination that Clevenger knowingly and voluntarily waived his *Miranda* rights. Id. at *4.

On October 16, 2008, Clevenger filed a pro se petition for post-conviction relief [Doc. 28-18 p. 4-22]. Counsel was subsequently appointed, and counsel filed an amendment to the petition alleging that Clevenger's statements should have been suppressed [*Id*. at 32-33, 41]. On June 18,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

2009, the State filed an answer to the petition stating that Clevenger was entitled to file a motion for a new trial [*Id*. at 45]. On July 14, 2009, Clevenger filed a motion for a new trial alleging, once again, that his statements should have been suppressed. [*Id*. at 47-49]. On December 7, 2009, the trial court denied the motion for a new trial and granted a delayed appeal [Doc. 28-10 p. 50-51]. On May 2, 2011, the TCCA determined that the *Miranda* issue had been previously determined in the original direct appeal and denied the delayed appeal. *State v. Clevenger*, No. E2010-00077-CCA-R3-CD, 2011 WL 1660580, at *3-4 (Tenn. Crim. App. May 2, 2011); *perm. app. denied* (Tenn. Jul. 15, 2011) ("*Clevenger II*"). The Tennessee Supreme Court ("TSC") denied Clevenger's application for discretionary review on July 15, 2011 [Doc. 28-17].

On April 22, 2013, following the delayed appeal, the State post-conviction court held an evidentiary hearing on Clevenger's post-conviction claims [Doc. 28-23]. Post-conviction relief was denied following the hearing [Doc. 28-18 p. 62-64]. The TCCA affirmed the denial of post-conviction relief on July 29, 2014. *Clevenger v. State*, E2013-01786-CCA-R3-PC, 2014 WL 3744274 (Tenn. Crim. App. Jul. 29, 2014); *perm. app. denied* (Tenn. Nov. 21, 2014) ("*Clevenger III*"). The TSC denied Clevenger's application for discretionary review on November 21, 2014. [Doc. 22-29].

On or about August 23, 2013, while Clevenger's post-conviction proceedings were ongoing, Clevenger filed the instant action raising the following grounds for relief, as paraphrased by the Court:

   Ground One:      Ineffective assistance of trial counsel

   Ground Two:      Denial of motion to suppress

   Ground Three:    Sufficiency of the evidence

[Doc. 2]. Respondent and Petitioner each moved to stay these proceedings pending the resolution of Clevenger's post-conviction action, and the Court granted the motions, thereby staying this

action and holding the petition in abeyance [*See* Docs. 7, 14, & 15]. After the conclusion of Clevenger's State-court proceedings, the Court ordered Respondent to respond to Clevenger's federal habeas petition and directed the Clerk to automatically lift the stay of these proceedings upon receipt of the response [Doc. 26]. Respondent answered the petition on November 21, 2018 [Doc. 30]. Clevenger filed a reply to the response on December 6, 2018 [Doc. 32].

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id*. at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only

where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the State's procedural rules, or that his trial counsel rendered ineffective assistance. *See id.* at 753. Additionally, the prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial

6

disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### III. DISCUSSION

#### A. Procedurally defaulted claims

##### 1. Ineffective assistance of counsel

Clevenger alleges that trial counsel rendered ineffective assistance in failing to: (1) adequately cross-examine the State's witnesses; (2) question why a rape kit was not performed on the victim; (3) call witnesses; (4) file a motion for a new trial; and (5) file a motion to dismiss his statements to police on *Miranda* grounds [Doc. 2 p. 27-29].

Clevenger raised numerous claims of ineffective assistance of counsel on post-conviction review, including the federal habeas claims he presents here [Doc. 28-18 p. 4-19, 31-33, & 39-40]. However, on appeal from the post-conviction court's denial of relief, Clevenger alleged only that trial counsel was ineffective for "not meeting with [Clevenger] an adequate enough amount of times to discuss his case, failing to give [Clevenger] adequate information as to make an informed decision regarding the case with only, at best, going over the discovery and not giving [Clevenger] a copy of the discovery for him to look over on his own time" [Doc. 28-24 p. 8].

A claim must be presented to the TCCA in order to be exhausted under 28 U.S.C. § 2254(b). *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust state remedies). Therefore, by failing to pursue these discrete habeas claims to the TCCA on appeal, Clevenger failed to fully exhaust these claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's

7

established appellate review process"). Accordingly, these claims are technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).

Clevenger argues that he can establish "cause" for any default of these claims, as his post-conviction counsel is at fault for failing to carry his federal habeas claims forward on appeal [*See* Doc. 32]. Generally, the ineffective assistance of post-conviction counsel cannot serve as cause for a procedural default. *Coleman*, 501 U.S. at 754. The Supreme Court altered the general rule in *Martinez v. Ryan*, holding that "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, 566 U.S. 1, 9 (2012). However, the rule in *Martinez* "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings[.]" *Id*. at 16. Thus, *Martinez* does not apply to a claim of ineffective assistance of trial counsel raised in the initial-review collateral stages but defaulted on appeal, as is the case here [Doc. 28-18 p. 62-64; Doc. 28-24 p. 8]. *See Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction court, and ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals"); *West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (stating that *Martinez* does not apply to a claim the petitioner raised in the initial review post-conviction proceeding but failed to preserve on appeal). Therefore, any alleged ineffectiveness of post-conviction counsel cannot serve as cause to excuse the default of these claims, and they must be dismissed.

## 2. Sufficiency of the evidence

Clevenger alleges that the evidence presented at his trial is legally insufficient to support his convictions, as no rape kit was conducted on the victim, and therefore, "there is no evidence to the rape" [Doc. 2 p. 30].

As noted above, a claim must be presented to the TCCA in order to be exhausted under 28 U.S.C. § 2254(b). *See Adams*, 330 F.3d at 398; *see also* Tenn. S. Ct. R. 39. Clevenger never presented this claim to the State courts, and he is now barred by State procedural rules from returning to pursue this claim. *See* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Accordingly, this claim is technically exhausted but procedurally defaulted. *See Jones*, 696 F.3d at 483 ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."). However, Clevenger does not allege any cognizable cause for his default or make any showing of resulting prejudice. Accordingly, this claim must be dismissed.

Alternatively, the Court notes that a federal habeas petitioner can successfully challenge the sufficiency of the evidence only when the evidence, viewed in the light most favorable to the prosecution, is such that no reasonable fact finder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court notes that in making this claim, Clevenger discounts the victim's extensive testimony about Clevenger's abuse against her and her sister, which was sufficient to satisfy the *Jackson* standard [Doc. 28-2 p. 28-34]. Therefore, even in the alternative, Clevenger is not entitled to relief.

### B. Suppression of statement to law enforcement

In another ground for relief, Clevenger asserts that he was never advised of his *Miranda* rights, and therefore, his inculpatory statements to police should have been suppressed [Doc. 2 p. 29-30].

Clevenger presented this claim on his delayed appeal [Doc. 28-12 p. 676-81]. Employing a totality of the circumstances test, the TCCA found that Clevenger "knowingly and voluntarily waived his *Miranda* rights," and that such a conclusion was supported by "four signed waivers of rights" Clevenger executed. *Clevenger II*, 2011 WL 1660580, at *2 (citing *Clevenger I,* 2008 WL 588862, at *4).

In *Miranda v. Arizona*, the Supreme Court held that, prior to a custodial interrogation, an accused must be advised of certain rights, such as the right to silence and the right to counsel, to protect his privilege against self-incrimination. *Miranda*, 384 U.S. 436, 444 (1966). These rights may be waived, provided that, under the totality of the circumstances, the waiver is made "voluntarily, knowingly[,] and intelligently." *Miranda*, 384 U.S. at 445; *Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005). In deciding the validity of a waiver, courts examine "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

In this case, Officer Maness testified at the suppression hearing that Clevenger's *Miranda* warnings were offered before each of his statements [Doc. 28-2 p. 5]. He testified that Clevenger "signed the statement, and again, his was given his *Miranda* warning. His *Miranda* rights were read to him. He also read the *Miranda* rights. He signed each *Miranda* waiver on the back of the statement that was written" [*Id*. at *5-6; Doc. 28-11 p. 3-10]. Officer Maness stated that he asked Clevenger if he understood his rights each time they were read [Doc. 28-2 p. 8]. The trial court determined that Clevenger's statements were given "with a full knowledge of his constitutional rights" and "without any coercion or threats" [Doc. 28-2 p. 15].

Therefore, in light of the record before the Court, it finds that the decision rejecting Clevenger's *Miranda* claim is not contrary to, nor does it involve an unreasonable application of,

clearly established federal law, and it is not based on an unreasonable determination of facts in light of the evidence presented. Accordingly, this claim is dismissed.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

Clevenger has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

          */s/ Harry S. Mattice, Jr.*
          HARRY S. MATTICE, JR.
          UNITED STATES DISTRICT JUDGE